KUSKIN, J.T.C.
This local property tax matter involves the following interrelated issues: 1) whether the amount of delinquency interest and penalty payable for a tax year must be recalculated when the taxes for the year are reduced as a result of an assessment appeal, and 2) if so, whether the interest and penalty attributable to excess taxes paid for the tax year may be credited against taxes, interest, and penalty obligations for the following year. The matter is before me on the equivalent of a motion for summary judgment filed by plaintiff seeking entry of judgment in accordance with its recalculation of excess delinquency interest and penalty paid for the initial tax year, 2000, and the credit available for the following tax year, 2001. The facts are not in dispute, and the issue presented is a legal one. For the reasons set forth below, I conclude that recalculation is required and a credit is appropriate. Accordingly, I grant plaintiffs motion.
Plaintiff is the owner of property designated as Block 1901, Lot 3 on defendant’s tax map. The property is commonly known as 714 Preakness Avenue. Plaintiff is a religious organization, and, *625 for tax year 2000, its property was initially treated for assessment purposes as tax exempt. During that year, the assessor determined that the property was no longer being used for a religious purpose, terminated the exemption, and returned the property to the assessment list by imposing an $877,700 added assessment for twelve months, pursuant to N.J.S.A. 54:4-63.26 to — 63.30. These statutes provide that, when a property ceases to be exempt, the added assessment procedure is to be used to restore the property to the assessment list. Plaintiff filed a timely appeal of the 2000 added assessment but did not pay the taxes due as a result of the assessment. For tax year 2001, the property was assessed at $638,000.
During 2001, defendant’s tax collector placed the property on the tax sale list. On June 5, 2001, in order to avoid the tax sale, plaintiff paid to the collector the sum of $28,122.70, which consisted of the following amounts:
A. $23,610.13 constituting payment of all taxes due for tax year 2000;
B. $2,457.11 representing' interest from the November 1, 2000 due date of the taxes, N.J.S.A. 54:4-63.8;
C. $1,457.61 representing a year-end penalty;
D. $113.69 representing interest on the penalty;
E. $365.95 representing interest on unpaid taxes due for the first quarter of 2001;
F. $103.29 representing interest on unpaid taxes due for the second quarter of 2001; and
G. $15 representing a fee related to the tax sale.
Plaintiff made no other payments for tax year 2001.
Plaintiffs appeal of the 2000 added assessment was settled in late 2002, and a Tax Court Judgment was issued on December 6, 2002 reducing the added assessment to $481,000 and providing that the Freeze Act, N.J.S.A. 54:51A-8, applied for tax year 2001. The taxes due for 2000 under the reduced assessment were $12,938.90, and, the taxes due for 2001 under the reduced assessment were $13,227.50. As of the date of entry of the Tax Court Judgment, delinquency interest of $4,456.05 and a penalty of $1,144.96, totaling $5,601.01, had accrued for tax year 2001 (all calculated on the basis of the original 2001 assessment).
*626 Based on the Tax Court Judgment, defendant’s tax collector determined that the taxes due with respect to the 2000 added assessment were reduced by $10,671.23 ($23,610.13 minus $12,938.90). She first credited that amount against the $5,601.01 in delinquency interest and penalty due for tax year 2001 and then credited the remainder, $5,070.22, against outstanding 2001 taxes (calculated on the basis of the reduced assessment of $481,000). The collector’s calculation resulted in a balance of taxes due for 2001 of $8,157.28 plus additional interest accruing until the taxes were paid.
Plaintiff contends that the assessor’s calculation of the credit to be applied against the 2001 taxes, delinquency interest, and penalty improperly failed to include the sum of $2,265.57 representing the delinquency interest and penalty paid for tax year 2000 attributable to the excess added assessment, that is, taxes paid on the $396,700 difference between $877,700 (the original added assessment) and $481,000 (the settlement assessment contained in the Tax Court judgment). Under plaintiffs calculation, the total credit available from tax year 2000 was $12,936.80 (the $10,671.23 credit calculated by defendant’s tax collector plus $2,265.57). Plaintiff further contends that delinquency interest and the penalty due for tax year 2001 should be based on the reduced assessment of $481,000. This produces a total obligation for 2001, including taxes, delinquency interest, and penalty, of $13,423.88. After applying the credit from tax year 2000 of $12,936.80, plaintiff calculates the balance due for tax year 2001 as $487.08, plus any interest which might accrue until the date of payment of that amount.
In response to plaintiffs contentions, defendant contends that, after an assessment reduction, its obligation is limited to a refund of excess taxes plus interest as required by statute. Defendant asserts that it has no statutory obligation or authority to refund or credit delinquency interest or penalties attributable to the excess taxes.
Various statutory provisions relate to the payment of taxes, delinquency interest, and penalties, and the refund or credit of *627 excess taxes. Under N.J.S.A. 54:4-66 (applicable to municipalities operating on a calendar fiscal year) and N.J.SA. 54:4-66.1 (applicable to municipalities operating on a State fiscal year), taxes are payable in quarterly installments on February 1, May 1, August 1, and November 1. If unpaid as of those dates, the taxes “shall become delinquent and remain delinquent until such time as all unpaid taxes, including taxes and other liens subsequently due and unpaid, together with interest have been fully paid and satisfied ....” N.J.SA. 54:4-66a; N.J.S.A. 54:4-66.1a. Under N.J.S.A 54:4-67, a “delinquency” means “the sum of all taxes and municipal charges due on a given parcel of property covering any number of quarters or years.” Interest on a delinquency may be imposed at a rate not to exceed 8% per annum on the first $1500 of taxes due and not to exceed 18% per annum on taxes due in excess of $1500. N.J.S.A. 54:4-67a. In addition, a year end penalty not exceeding 6% may be imposed if the delinquency exceeds $10,000 and is not paid by the end of the fiscal year in which billed. N.J.S.A. 54:4-67(c). Under N.J.S.A. 54:5-6, property taxes constitute a continuous lien, and interest, penalties, and costs of collection are included in the lien. Under N.J.S.A. 54:5-29, a payment (such as that made by plaintiff here) to avoid a tax sale is to be credited “first to the interest, followed by the oldest delinquencies, costs and penalties.”
The statutes provide for a refund of taxes when an assessment is reduced by appeal. Under N.J.S.A. 54:3-27.2, when a taxpayer successfully appeals an assessment, the taxing district “shall refund any excess taxes paid, together with interest thereon from the date of payment at a rate of 5% per annum, less any amount of taxes, interest, or both, which may be applied against delinquencies pursuant to [N.J.S.A. 54:4-134], -within sixty days of the date of final judgment.” Under N.J.S.A. 54:4-134, if, at the time a refund is due,
any property taxes, water or sewer payments ... imposed or to be collected by the municipality against that property ... are delinquent ..., the governing body of the ... taxing district in which the property is located may apply the refund, or such portion thereof as may be necessary, including any accrued interest, against the delinquency.
*628 Pursuant to N.J.S.A. 54:4-69.2, in lieu of a refund of taxes paid, a taxpayer obtaining a reduction in an assessment may obtain a credit equal to the refund with the credit to be applied “against any taxes then due or to become due on such property; provided, such property is at that time assessed against the same owner as it was at the time the appealed assessment was made.”
Defendant reads the statutory provisions requiring a refund or permitting a credit as limiting the refund or credit to “taxes” plus interest at 5%, and no more. In support of its position, defendant relies on Simon v. Voorhees Tp., 289 N.J.Super. 116, 672 A.2d 1292 (App.Div.), certif. denied, 145 N.J. 373, 678 A.2d 714 (1996), where the Appellate Division held that the amount of principal and interest payable to the holder of a tax sale certificate in order to redeem the certificate could not be reduced as the result of the settlement of a tax appeal. Id. at 123-24, 672 A.2d at 1295-96. The settlement reduced the assessment which was the basis for calculating the tax delinquency reflected in the certificate. Id. at 118-19, 672 A.2d at 1292-93. Defendant argues that, under this decision, interest and penalties resulting from tax delinquencies may not be reduced, refunded, or credited if the underlying tax assessment is reduced as a result of an appeal.
Plaintiff does not, and cannot, point to any express statutory provision in support of its position. Thus, if the statutes are read literally, defendant should prevail. The perils of such a reading were discussed in Olde Lafayette Village, Ltd. v. Lafayette Tp., 9 N.J.Tax 562 (Tax 1988), where Judge Andrew interpreted statutory language in a manner different from its literal meaning but in accordance with the legislative purpose. He noted the remark by Judge Learned Hand that “[t]here is no surer way to misread any document than to read it literally.” Id. at 568 (citations omitted). Our Supreme Court has recognized that, although the literal language of a statute must be considered, the goal of the courts in interpreting statutes is “effectuating the legislative plan as it may be gathered from the enactment ‘when read in full light of its history, purpose and context.’ ” State v. Haliski, 140 N.J. 1, 9, *629 656 A.2d 1246, 1250 (1995) (quoting State v. Gill, 47 N.J. 441, 444, 221 A.2d 521, 523 (1966)).
The purpose of the tax delinquency statutes discussed above is to ensure that a municipality receives timely tax payments. The statutes accomplish this by imposing a significant interest and penalty cost for delinquency. City of East Orange v. Palmer, 52 N.J. 329, 245 A.2d 327 (1968) (stating that the interest rate imposed by N.J.S.A. 54:4-67 “is designedly such that it will not be worth the taxpayer’s while to make the municipality his involuntary banker.” Id. at 334, 245 A.2d at 329.). A critical element of the statutory language is the definition of a delinquency in N.J.S.A. 54:4-67 as “taxes and municipal charges due on any given parcel of property” (emphasis added). When a tax assessment is reduced as the result of an appeal, the taxes attributable to the difference between the original assessment and the reduced assessment are not “due” because the court’s decision or the settlement agreement establishes that the original assessment was excessive. To accept defendant’s position and permit the municipality to retain interest and penalties based on an excess assessment: 1) would permit the municipality to retain interest and penalties on monies which should never have been paid to it, and 2) would not further the statutory purpose. Such a result would reflect an improper interpretation of the applicable statutes and would be fundamentally unfair.
The concept that taxes based on excessive assessments are not “due” is implied in the requirement in N.J.S.A. 54:3-27.2 that a tax refund be paid by a municipality “with interest thereon from the date of payment.” If the taxes to be refunded were regarded as “due” when paid based on the original assessment, then no interest should be payable for the period prior to the entry of the judgment reducing the assessment. By mandating that interest runs “from the date of payment” of the excess taxes, the statute treats the excess taxes as not being due when paid. This interpretation of N.J.S.A. 54:3-27.2 is not contradicted by City of Atlantic City v. N.J. Economic Development Authority, 5 N.J.Tax 137 (Tax 1983), aff'd o.b., per curiam, 6 N.J.Tax 344 (App.Div. *630 1984). There, the Tax Court rejected the municipality's contention that interest on additional taxes, resulting from a court determined assessment increase, accrued from the dates installment payments should have been made during the year to which the increase applied. The court held that, when a judgment increases a tax assessment, interest on the increased taxes does not accrue before the date of the judgment. The court’s rationale for its decision was the following: “Prior to the entry of judgment, neither party can determine what, if any, additional taxes will be due. No interest can accrue until such a determination is made by the judgment.” Id. at 144. This decision reflects a practical and fair resolution of the particular issue before the court. It does not conflict with the recognition in N.J.S.A. 54:3-27.2 that, when taxes are reduced by judgment, the taxpayer should receive interest “from the date of payment” as compensation for the loss of the use of the tax payments that were not due. See Frieman v. Randolph Tp., 185 N.J.Super. 152, 447 A.2d 927 (App.Div.1982) (discussing the history of statutory requirements for property tax payments as a prerequisite to appeal and the history of the requirement for municipal interest payments on excess taxes).
My conclusion that delinquency interest and penalties attributable to excess taxes should be refunded or credited derives additional support from the “well recognized rule that ‘interest follows principal.’ ” Matthews v. State, 187 N.J.Super. 1, 10, 453 A.2d 543, 548 (App.Div.1982), appeal dismissed as moot, 93 N.J. 298, 460 A.2d 694 (1983). In Matthews, the court disallowed New Jersey’s practice of distributing revenues paid into the Casino Revenue Fund as required by statute while retaining in the State’s General Revenue Fund any interest earned on those revenues. The court based its decision primarily on its interpretation of the casino clause in the State Constitution, but noted that the result was “consistent with the well recognized rule” quoted above.
The Matthews court relied on Jersey City v. Zink, 133 N.J.L. 437, 44 A.2d 825 (E. & A.1945), cert. denied, 326 U.S. 797, 66 S.Ct. 493, 90 L.Ed. 485 (1946) as establishing that interest follows principal. There, the issue was whether the State of New Jersey *631 was required by statute to distribute to local taxing districts delinquency interest paid by railroads with respect to taxes imposed by the State. Under the statute then in effect, N.J.S.A. 54:24-11 (repealed by L. 1941, c. 291, § 75), “[t]he entire amount of tax derived [by the State] from the assessment [of Class II railroad properties] shall be allotted to and paid over to the local taxing districts through which the railroads ... run, .... ” Jersey City v. Zink, supra, 133 N.J.L. at 455, 44 A.2d at 834-35. New Jersey contended that the taxing districts were not entitled to share in the delinquency interest on the grounds that N.J.S.A. 54:24-11 and -13 (which set forth the procedures for distribution to taxing districts) “did not specifically authorize the distribution of [interest] on the same basis as the principal of Class II taxes.” Id. at 439, 44 A.2d at 827. The Court rejected this argument and applied the rule that interest follows principal.
The interest was compensation for the loss of the use of the principal and on this basis alone it follows the principal. There is nothing in the statutes to suggest a purpose to separate the two and make one disposition of the principal and another of the interest, but quite to the contrary. Since interest is compensation for loss of the use of the principal it inevitably follows that the interest belongs to him who has lost the use of his principal. A contrary construction would do violence to reason and logic.
[Jersey City v. Zink, supra, at 441, 44 A.2d at 828.]
The court also stated that “in the absence of a specific provision to the contrary, no other rational construction of the statute is possible.” Id. at 443, 44 A.2d at 829.
The analysis and logic of the Zink decision, interpreting the phrase “entire amount of tax” in N.J.S.A. 54:24-11, is applicable to an interpretation of the phrase “excess taxes paid” in N.J.S.A. 54:3-27.2 and the reference to “taxes” in N.J.S.A. 54:4-69.2. None of these statutes refers to interest. Consequently, the statutory construction in Zink supports a conclusion that, under N.J.S.A. 54:3-27.2 and N.J.S.A. 54:4-69.2, interest and penalties attributable to excess taxes must be refunded or credited with the taxes. The melding of interest and penalties into the term “taxes” also is consistent with the operation of N.J.S.A. 54:4-69.2 (allowing a taxpayer to obtain, in lieu of a tax refund, a credit in the amount of the refund to be applied agáinst “any taxes then due or to *632 become due on such property”) and N.J.S.A 54:4-134 (allowing a municipality to apply a tax refund against delinquent “property taxes”). Both statutes refer only to taxes, but, if delinquency interest or penalties were outstanding, the municipality may, and should, apply the credit first to pay the interest and penalties and then against taxes. Indeed, as described above, this is precisely how defendant’s tax collector applied the credit she calculated for tax year 2000 against plaintiffs outstanding obligations for tax year 2001. If the credit provided under N.J.S.A. 54:4-69.2 or -134 could be applied only against taxes, leaving delinquency interest and penalties unpaid, the result “would do violence to reason and logic.” Jersey City v. Zink, supra, 133 N.J.L. at 441, 44 A.2d at 828. Cf. N.J.S.A. 54:5-29 (expressly requiring that a payment to avoid a tax sale be applied “first to interest”).
The unfairness of permitting a municipality to retain delinquency interest and penalties attributable to excess taxes can be illustrated by two hypothetical situations. The first involves a taxpayer which pays quarterly tax installments after their due dates and pays delinquency interest on each installment. If the taxpayer appeals the assessment, contends that it was entitled to an exemption for the tax year in question, and obtains a judgment granting the exemption, all tax payments would be refunded. To permit the municipality to retain the delinquency interest and any penalty imposed with respect to taxes that should not have been paid would be inappropriate, inequitable, and illogical. Even defendant acknowledges that the municipality should not be entitled to retain the interest and penalty under these hypothetical facts.
The second hypothetical situation involves a taxpayer that makes timely payment of the February 1 (first quarter) tax installment, files a direct appeal with the Tax Court by April 1, and makes no further tax payments for the year under appeal. If, after December 31 of that year, the Tax Court enters judgment reducing the assessment so that taxes for the year are equal to the amount of the first quarter installment, requiring the taxpayer to pay delinquency interest and a penalty with respect to the unpaid, *633 but no longer due, taxes for the second, third and fourth quarters would be inappropriate, inequitable, and illogical.
If delinquency interest and penalties may not be retained by a municipality, or are not payable to a municipality, under the foregoing hypothetical facts, then defendant should not be permitted to retain delinquency interest and penalties attributable to the excess taxes plaintiff paid. The same principles of statutory interpretation, fairness, and logic apply to the hypothetical and actual facts. That the applicable statutes do not provide expressly for a refund or credit of delinquency interest or penalties does not preclude the granting of a refund or credit of these amounts. The statutes simply do not contemplate the circumstances presented by plaintiffs appeal. The court, therefore, must determine probable legislative intent based on the statutory scheme. Pennsauken Tp. v. Schad, 160 N.J. 156, 733 A.2d 1159 (1999) (stating that “where a statute or ordinance does not expressly address a specific situation, the court will interpret it ‘consonant with the probable intent of the draftsman “had he anticipated the matter at hand.” ’ ” Id. at 170, 733 A.2d at 1166 (citation omitted)). In Jersey City v. Zink, supra, the Court applied concepts of fairness and logic in a tax context analogous to that presented in this matter. Similarly, in City of East Orange v. Palmer, supra, 52 N.J. 329, 334-35, 245 A.2d 327, 329-30, the Court applied these concepts in holding that the State of New Jersey need not pay tax delinquency interest under N.J.S.A. 54:4-67 even though the statute does not exclude governmental entities from its provisions. Cf. N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-lb, as amended by L. 1999, c. 208, §§ 5 and 13, reflecting a legislative purpose to relieve taxpayers of excessive payment requirements in appropriate circumstances by permitting county boards of taxation and the Tax Court to relax requirements for tax payments in connection with appeals “as the interests of justice may require.”
In the absence of express statutory provisions permitting a municipality to retain delinquency interest and penalties attributable to excess taxes, the statutes should be interpreted to reach a reasonable and equitable result consistent with the legislative *634 purpose. The legislative purpose of N.J.S.A. 54:4-67 to encourage timely tax payments is not thwarted by the equitable result of precluding a municipality from retaining excess delinquency interest or penalties. The prospect of a refund or credit of these excess amounts is unlikely to induce a taxpayer to “make the municipality his involuntary banker.” City of East Orange v. Palmer, supra, 52 N.J. at 334, 245 A.2d at 329. The taxpayer cannot determine in advance of a court judgment whether and to what extent a tax assessment will be reduced, and, therefore, the taxpayer cannot determine in advance whether and to what extent delinquency interest and penalties are excessive and subject to refund or credit. Thus the incentive to make timely payment of taxes remains, even if a taxpayer is permitted to recover delinquency interest and penalties on taxes determined by judgment to be excessive.
In reaching the foregoing conclusions, I have considered the Appellate Division decisions in Frieman v. Randolph Tp., supra, 185 N.J.Super. 152, 447 A.2d 927 and New York Life Ins. Co. v. Lyhdhurst Tp., 280 N.J.Super. 387, 655 A.2d 481 (App.Div.), certif. denied, 142 N.J. 457, 663 A.2d 1363 (1995). Both eases hold that, in the absence of statutory authority, interest is not recoverable on a tax refund. Frieman, supra at 163, 447 A.2d at 932; New York Life Ins. Co., supra at 390, 655 A.2d at 482. In New York Life Ins. Co., the court expressly disapproved the Tax Court’s holding in 9W Contractors, Inc. v. Englewood Cliffs Bor., 176 N.J.Super. 603, 1 N.J. Tax 465, 424 A.2d 461 (Tax 1980). There, in the absence of express statutory authority, the court held that, after expiration of the sixty day period for payment of refunds under N.J.S.A. 54:4-27.2, the municipality was required to pay interest at a “fair and reasonable” rate. Id. at 480, 424 A.2d at 469.
Neither Frieman nor New York Life Ins. Co. addresses the rights of a taxpayer to recover delinquency interest and penalties paid with respect to excess taxes, and, therefore, neither requires a different outcome in this matter. Requiring a municipality to pay interest on excess taxes in the absence of statutory authority *635 is different from precluding a municipality from retaining delinquency interest and penalties on taxes which the municipality has acknowledged (by a settlement agreement), or which the Tax Court has determined, were not due. In the former situation, the municipality must use its funds to pay the interest. In the latter situation, the municipality simply returns the taxpayer’s money in the same fashion as a refund of excess taxes. Excess taxes are refundable even in the absence of express statutory authority. See Frieman, supra (acknowledging the propriety of refunds of excess taxes paid during years preceding the enactment of express statutory language requiring refunds). Therefore, under a reasonable and fair reading of the refund requirement in N.J.S.A. 54:3-27.2, delinquency interest and penalties paid with respect to excess taxes should be treated in the same manner as, and deemed part of, the excess taxes. The excess interest and penalties are as much the taxpayer’s money as the excess taxes. Of. N.J.S.A 54:49-10 (a provision of the State Uniform Tax Procedure Act stating that all penalties and interest imposed by any State tax law “shall be payable to and recoverable by the [Director of the Division of Taxation] in the same manner as if they were a part of the tax imposed”).
Simon v. Voorhees Tp., supra, 289 N.J.Super. 116, 672 A.2d 1292, also does not require a different result. In that case, the rights of a third party, the holder of the tax sale certificate, had been established upon the purchase of the certificate. The Appellate Division’s holding simply ensured that the certificate holder would be reimbursed for the amount expended to purchase the certificate, plus statutory interest. The tax sale could not be undone. See Crusader Servicing Corp. v. City of Wildwood, 345 N.J.Super. 456, 465, 785 A.2d 484, 490 (Law Div.2001) (holding that the expectations of the holder of an invalid tax sale certificate are determinative in setting the rate of interest payable to the holder on additional taxes paid to the municipality). Simon v. Voorhees Tp. did not address whether the municipality could retain interest attributable to taxes based on the difference between the original assessment and the reduced assessment resulting from the appeal. Here, no third party is involved, and the *636 payment in question was made by the taxpayer which seeks a credit from the municipality for excess interest and penalties.
Defendant contends that requiring a refund of excess delinquency interest and penalties would adversely affect the municipal budgeting process. However, defendant failed to cite any statutory or regulatory provision indicating that the anticipated receipt of interest or penalties on tax delinquencies is included in the process. Defendant did not even attempt to demonstrate that defendant’s inability to retain delinquency interest and penalties on excess taxes would affect its budget. Under N.J.S.A. 40A:4-23, a municipal budget must classify anticipated revenues into categories. One category is “receipts from delinquent taxes.” The definition of “delinquent taxes” is “taxes levied for prior fiscal years unpaid and owing to the local unit” plus the “lien value of tax titles to real estate standing in the name of the municipality.” N.J.S.A. 40A:4-29. The anticipated revenues from “delinquent taxes” are determined by multiplying the delinquency amount by the percentage of collection of “delinquent taxes” for the preceding fiscal year. Ibid. The statutes do not refer to anticipated revenue in the form of delinquency interest or penalties. Under N.J.S.A. 40A:4-40, a municipal budget must include a reserve for uncollected taxes (not uncollected delinquency interest and penalties) sufficient in amount “so that the anticipated cash receipts for the fiscal year shall at least equal” the total of all current budget appropriations, other anticipated current expenditures, and school, county, State, local and special district taxes. Because anticipated revenues are offset by a reserve, requiring defendant to credit against plaintiffs 2001 obligations a portion of the delinquency interest and penalty received from plaintiff for tax year 2000 and to reduce the amount of the delinquency interest and penalty payable for tax year 2001, is unlikely to have a meaningful impact on defendant’s budget. Even if the term “taxes” as used in the foregoing budget statutes is interpreted to include delinquency interest and penalties, the increase in anticipated revenue will be offset by a similar increase in the reserve. Defendant has failed to establish that its claim of a potential impact on the municipal *637 budgeting process has any merit. Therefore, the claim provides no basis for denying relief to plaintiff.
Based on the preceding analysis, I conclude that 1) delinquency interest and the penalty due from plaintiff for tax years 2000 and 2001 should be calculated based on the reduced assessment of $481,000, and 2) the amount of credit available to plaintiff for tax year 2001 includes the taxes, delinquency interest, and penalty paid for tax year 2000 and attributable to the $396,700 excess added assessment for that year. Because excess delinquency interest and penalties are encompassed by the term “taxes” as used in N.J.S.A. 54:3-27.2 and N.J.S.A. 54:4-69.2, interest at the rate of 5% per annum on excess taxes and on excess delinquency interest and penalties for tax year 2000 should be added to the amount credited for tax year 2001.
Plaintiffs motion to determine the amount due for tax year 2001 in accordance with its calculations is granted, subject to any modifications required by the preceding rulings.